**INTERNATIONAL TRADING PARTNERS, INC.,**
Plaintiff,

v.

**COBRA SCOOTERS, LLC,**
et al., Defendants.

**CIVIL NO. 05–1646 (PG/GAG).**

United States District Court,
D. Puerto Rico.

Dec. 8, 2005.

Alfredo Fernandez–Martinez, Delgado & Fernandez, Jenyfer Garcia–Soto, Colom Fagundo & Associates, San Juan, PR, for Plaintiff.

Luis A. Gonzalez–Perez, L.A. Gonzalez Law Office PA, Orlando, FL, for Defendant/Counter Claimant.

## OPINION AND ORDER

GELPI, United States Magistrate Judge.

This matter is before the court on defendant's motion to dismiss pursuant to Rule 12(b)(2) and 12(b)(6). The action was commenced by plaintiff, International Trading Partners, Inc. ("ITP") against Cobra Scooters, LLC ("Cobra"), Taiwan Golden Bee ("Golden Bee"), and Florida Association of Truckers d/b/a FAT Cycle Riders ("FAT Riders"). After reviewing the pleadings and pertinent law, defendant's motion is **GRANTED** (Docket No. 58). ITP's motion to strike Golden Bee's reply is **DENIED** (Docket No. 71) and Golden Bee's subsequent opposition is **MOOT** (Docket No. 72).

### I. Motion to Dismiss Standard

When ruling on a motion to dismiss, whether for failure to state a claim upon which relief can be granted or for lack of personal jurisdiction, the court will take the facts affirmatively alleged by plaintiff as true and construe the disputed facts in the light most favorable to the plaintiff without crediting conclusory allegations. *Berezin v. Regency Savings Bank,* 234 F.3d 68, 70 (1st Cir.2000); *Ticketmaster–New York v. Alioto,* 26 F.3d 201, 203 (1994). In order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988).

### II. Procedural History and Relevant Background Information

On June 16, 2005, ITP commenced this action against Cobra and Golden Bee. (*See* Docket No. 1.) ITP is a corporation, operating from Carolina, Puerto Rico, engaged in the business of importing, distributing and selling scooters, motorcycles and all-terrain vehicles (ATVs). (*See* Docket No. 44, ¶¶ 1 & 8.) Cobra is a limited liability corporation, with a principal place of business in Sugar Land, Texas, which imports and distributes Golden Bee and other foreign made vehicles in North America and the Caribbean. (*See* Docket No. 44, ¶¶ 2 & 9.) Golden Bee, with its principal place of business in Taiwan, is engaged in the manufacturing and distribution of a variety of products, including scooters, motorcycles and ATVs. (*Id.* at ¶ 3.) Golden Bee supplies products to Cobra. (*Id.*)

In October 2004, ITP and Cobra entered into an exclusive distribution agreement, as defined by section (b) of P.R. Laws Ann. tit. 10, § 278 ("Act 75"), wherein Cobra agreed to supply and ITP agreed to distribute Golden Bee scooters, motorcycles and ATVs. (*Id.* at ¶ 10.) The agreement covered most of the Carribean region, including Puerto Rico. (*Id.*) According to the express terms of the agreement, ITP has the option of ordering products from either Cobra in the United States or from Golden Bee in Taiwan. (*Id.* at ¶ 11.)

ITP alleges that since the beginning of 2005, Cobra has pressured ITP to order

directly from Taiwan rather than from Cobra. (*Id.* at ¶ 11.) In its answer to the amended complaint, Cobra denies this allegation. (*See* Docket No. 55, ¶ 11.) ITP also alleges that Cobra has made it nearly impossible for ITP to distribute the most popular scooter model in Puerto Rico. (*See* Docket No. 44, ¶ 13.) ITP alleges that, in the past, Cobra would commit to the availability of scooters and subsequently renege on the commitment. (*Id.*) ITP also alleges that Cobra has also damaged its ability to promote the Golden Bee products by failing to provide sufficient spare parts, and by not sending ITP sales brochures required for dealer sales calls. (*See* Docket No. 44, ¶ 15.)

Further, ITP alleges that Cobra is illegally selling and distributing Golden Bee scooters to other dealers in Puerto Rico. (*Id.* at ¶ 16.) ITP alleges that Cobra has recognized that others are indeed selling their products in Puerto Rico, but have refused to remedy the sales in ITP's exclusive territory. (*Id.*) To evidence these practices, ITP amended its complaint to include FAT Riders, who ITP claims is selling Golden Bee scooters, bought from Cobra, to dealers in Puerto Rico. (*Id.* at ¶ 17.) Cobra emphatically denies these allegations. (*See* Docket No. 55, ¶ 17.) ITP alleges that it is suffering considerable financial losses as a result of Cobra's failure to protect the exclusive market assigned to ITP by contract. (*See* Docket No. 44, ¶ 19.)

On September 28, 2005, Golden Bee moved the court to dismiss the action against it. (*See* Docket No. 58.) Golden Bee asserts that its mere placement of scooters in Puerto Rico's stream of commerce does not suffice a "minimum contacts" analysis and thus this court cannot exercise personal jurisdiction over them. (*See* Docket No. 58.) Golden Bee also asserts that ITP has failed to plead any action of impairment, under Act 75, or resulting damages against them. (*Id.*) On November 2, 2005, ITP submitted its opposition to the motion. (*See* Docket No. 69.) Golden Bee further replied to which ITP moved to strike. (*See* Docket Nos. 70 & 71 respectively.)

## III. Legal Analysis

### A. Personal Jurisdiction

■ The Fourteenth Amendment of the United States Constitution bars the states from depriving any person of life, liberty or property without due process of law. Joseph W. Glannon, *Civil Procedure: Examples and Explanations,* ch. 1, 3–4 (4th ed., Aspen Law & Business 2001). A forum state is in violation of this guarantee if its courts enter judgment against a defendant who has not had any contact with it. *Id.* While personal jurisdiction is divided into general and specific jurisdiction, the present case only requires a specific jurisdiction analysis[1]. *See Pritzker v. Yari,* 42 F.3d 53, 59–60 (1st Cir.1994). A defendant is only subject to specific jurisdiction for claims arising out limited instate activities, also known as "minimum contacts." *See* Glannon, *Civil Procedure* at ch.1, 5 (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

The existence of specific personal jurisdiction depends upon the plaintiff's ability to satisfy two fundamental conditions: "first, that the forum in which the federal district court sits has a long-arm statute

---

1. General jurisdiction is appropriate when the defendant's activities in the state are so "substantial and continuous" that it would expect to be subject to suit there on any claim and would suffer no inconvenience from defending suit there. Glannon, *Civil Procedure* at ch.1, 7.

that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Pritzker,* 42 F.3d at 60.

Where, as here, the court elects to dispose of a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the court applies a *prima facie* standard of review. *See United Elec. Workers v. 163 Pleasant St. Corp.,* 987 F.2d 39, 43–44 (1st Cir.1993). The First Circuit has also ruled that unless the district court otherwise informs the parties, it is to be understood that the *prima facie* standard will be used. *See Rodriguez v. Fullerton Tires Corp.,* 115 F.3d 81, 83 (1st Cir.1997). As stated previously, all facts in the complaint will be taken as true and any fact in dispute will be viewed in the light most favorable to the plaintiff.

### 1. Puerto Rico's Long–Arm Statute

■ In pertinent part, the local long-arm provision reads as follows: "(a) whenever the person to be served is not domiciled in Puerto Rico, the [courts] shall take jurisdiction . . . if the action or claim arises because said person: 1) transacted business in Puerto Rico . . . ; or 2) participated in tortious acts within Puerto Rico." P.R. Laws Ann. tit. 32, app. III, Rule 4.7(a)(1983). The phrase "transacted business" has been defined broadly, as a commercially practical one, and not a commercially technical one. *See Rios v. Aramark Corp.,* 139 F.Supp.2d 210, 226–27 (D.P.R. 2001); *Industrial Siderúrgica, Inc. v. Thyssen Steel Caribbean, Inc.,* 114 D.P.R. 548, 1983 WL 204174, *557 (1983). From a practical standpoint, Golden Bee's transaction of business in Puerto Rico is tenuous at best. Golden Bee manufactures, distributes and supplies its products in Puerto Rico through Cobra. Golden Bee clearly has an economic gain from its rela-

tionship with Cobra. Given that Puerto Rico's long-arm statute is broad and flexible, the court finds it applicable and proceeds with the due process analysis.

### 2. Due Process

The court embarks on a tripartite inquiry as to defendant's contacts with the forum state: relatedness, purposeful availment, and reasonableness. First, the claim underlying the litigation must directly arise out of, or relate to, the defendants forum-state activities. *Pritzker,* 42 F.3d at 60–61. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. *Id.* Third, the exercise of jurisdiction must, in light of the "Gestalt factors," be reasonable. *Id.* The First Circuit's tripartite analysis was established in order to aid the courts in deciding whether a defendant has "minimum contacts" with the forum state and whether the exercise of jurisdiction comports with notions for fair play and substantial justice. In this case, the court cannot find the minimum contacts sufficient to exercise jurisdiction over Golden Bee.

■ First, ITP's claim may not arise out of the general relationship between Cobra and Golden Bee. *See, e.g., Phillips Exeter,* 196 F.3d 284, 290 (1st Cir.1999) ("The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."). ITP's claims against Cobra's alleged misgivings do not relate to Golden Bee. It is clear that Golden Bee supplies its products to Cobra who in turn sells

them to ITP. However, this is where the relatedness ends. ITP's allegations center almost exclusively on Cobra. Only through Cobra's relationship with Golden Bee does ITP attempt to relate them to the suit. Even under a relaxed relatedness test, these allegations do not pass muster.

 Second, under a "stream of commerce" lense, Golden Bee has not purposefully availed itself to this forum. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. *Asahi Metal Industry, Co. · v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Additional contacts, such as product marketing, product design tailored to the forum, and establishing channels for customer support, are necessary for "purposeful availment." *Id.* The additional contacts are absent here. Aside from manufacturing the products, and distributing and supplying to Cobra, ITP alleges nothing else against Golden Bee.

In its opposition to the motion to dismiss, ITP argues that Golden Bee has availed itself because it markets their products through Cobra who serve as a sales agent in Puerto Rico. This argument has no merit, particularly when the complaint states otherwise. In the amended complaint, ITP affirmatively states that Cobra, and significantly **not** Golden Bee, has damaged ITP's ability to promote the products by "failing to provide sufficient spare parts, and by not sending them sales brochures required for dealer sales calls." *See* Docket No. 44, ¶ 15. If the court takes this fact as true, there are not additional contacts as required by *Asahi.* Thus, by merely placing their products into the stream of commerce, Golden Bee has not purposefully availed itself to Puerto Rico.

Finally, given that the court cannot find relatedness nor purposeful availment, the exercise of jurisdiction over Golden Bee is not reasonable, and would not comport with notions of fair play and substantial justice. *See International Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

Therefore, Golden Bee's motion to dismiss for lack of personal jurisdiction is **GRANTED.**

### B. Failure to State a Claim

Given that the court cannot exercise jurisdiction over Golden Bee, the court need not enter into a 12(b)(6) analysis.

## IV. Conclusion

Therefore, given that court cannot exercise personal jurisdiction against Golden Bee, the motion dismiss is **GRANTED** (Docket No. 58). ITP's motion to strike Golden Bee's reply is **DENIED** (Docket No. 71) and Golden Bee's subsequent opposition is **MOOT** (Docket No. 72).

**SO ORDERED.**